[No. A024556. First Dist., Div. One. Apr. 28, 1986.]

DOWNTOWN PALO ALTO COMMITTEE FOR
FAIR ASSESSMENT et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF PALO ALTO et al., Defendants and Respondents.

388

**COUNSEL**

Brobeck, Phleger & Harrison, Paul N. McCloskey, Jr., Thoits, Lehman & Love, Diana Berghausen, Vivian L. Kral and Stephen C. Gerrish for Plaintiffs and Appellants.

Diane M. Lee, City Attorney, Anthony C. Bennetti and Clark E. Guinan, Jr., Assistant City Attorneys, for Defendants and Respondents.

OPINION

NEWSOM, J.—Appellants are operators of businesses in the downtown area of the City of Palo Alto (hereafter sometimes the City) who are affected by an ordinance enacted by respondent creating a Downtown Business Improvement Area and permitting annual charges to be assessed against businesses in the designated improvement area. By way of a petition for writ of mandate filed in Santa Clara County Superior Court, appellants challenged the validity of the ordinance on numerous grounds.

After a hearing at which documentary and testimonial evidence was introduced, the trial court found the ordinance valid and denied the petition. Appellants subsequently filed a motion for reconsideration and for a new trial, based upon newly discovered evidence. The motion was denied and this appeal followed. The facts pertinent to the issues raised on appeal are as follows.

In May of 1982, respondent Downtown Palo Alto, Inc. (hereafter DPAI), a nonprofit membership corporation representing 164 businesses in downtown Palo Alto, presented a proposal for an ordinance establishing parking and business improvement area to the Palo Alto City Council (hereafter City Council). At that time, an estimated 800 businesses were operating in the "assessment district" to be thus created. DPAI suggested that 240 of the affected businesses be charged a basic assessment of $36, with a greater assessment of $110 imposed upon 563 of such businesses with the amount of the assessment to be determined by the nature of the business and the likelihood that each enterprise would be benefited by the improvements to be made.

On July 26, 1982, the City Council, by unanimous vote, adopted Resolution No. 6058, stating thereby its intention to form the proposed improvement area and impose a two-tiered assessment schedule as suggested by DPAI. Public hearing on the matter was set for August 30, 1982. The resolution also provided for notice of the intention to establish a parking and business improvement area to be given in the manner prescribed by Streets and Highways Code section 36522, which provides, in pertinent part: "Notice of a hearing held under Section 36521, 36561, or 36580 *shall* be given by both of the following: (a) One publication of the resolution of intention in a newspaper of general circulation in the city. (b) Mailing of a complete

copy of the resolution of intention to *each business* in the proposed, or established, area." (Italics added.)

The City then began the process of compiling a list of the businesses to which the requisite notice of hearing would be given.[1] Having no business permit requirement, the City was without an existing list of businesses in the proposed improvement area, and consequently consulted three sources for such information: the 1982 unsecured property tax roll; a publication entitled "Contacts Influential," a market research and development service compilation "used by the business community"; and the Pacific Telephone "reverse" telephone directory. In her declaration, Irene Lentini, executive secretary for the City Council, stated that she performed this task between June and early August, 1982, with the assistance of a temporary employee from Roberta's Temporary Service, identified by her as Jeanne Sommer. According to Ms. Lentini, the February 1982 Pacific Telephone directory was used to supplement the names on the other two sources, and after deleting duplications, "the final list contained 727 business names." On August 10, 1982, a notice of hearing was mailed to every business establishment appearing on this final list.

Appellants showed that 21 names on the City's list were duplications. To rebut respondent's evidence, appellants also submitted the Declaration of John B. Keating, who reviewed the Pacific Telephone reverse telephone directory for February of 1982, and found 131 businesses identified therein as located in the improvement area which were "*not* listed in the City's list of businesses to whom notices were sent." In total, 179 businesses established by appellants as situated within the improvement area were not included in the City's list.

At trial, appellants also offered the testimony of Roberta Colin, operator of Roberta's Temporary Service, to rebut Ms. Lentini's assertion that the only list compiled by the City was that mailed on August 10, 1982, and prepared with the assistance of Jeanne Sommer. Ms. Colin testified that she did not provide employees to the City until September of 1982, and did not send Jeanne Sommer to work for the City until November 4, 1982. In its motion for reconsideration and for a new trial, appellants sought to introduce newly discovered evidence, consisting of the declaration of Jeanne Sommer, to corroborate Roberta Colin's testimony. The court denied the motion on the ground that such evidence "would not justify a different result . . . ."

---

[1]The first requirement of section 36522 was satisfied when the City published a notice of hearing and the resolution of intention in the Peninsula Times Tribune.

After a public hearing on August 30, at which only three persons appeared in opposition to the formation of the improvement area, Ordinance No. 3388, creating the Downtown Business Improvement Area (hereafter the ordinance), was introduced. The ordinance was formally enacted by the City Council on September 13, 1982.

On November 14, 1984, after all briefs on appeal had been filed, the City published and mailed to all businesses in the district a notice of intention to dissolve the Downtown Business Improvement Area. (Resolution No. 6327.) Following a hearing on December 3 and 17, 1984, the improvement district was dissolved.

■ As a threshold matter, the dissolution of the improvement district by the City subsequent to the judgment has rendered moot the issues presented on appeal. The validity of the ordinance is no longer of consequence to the parties before this court. Any ruling by this court can have no practical impact or provide appellants effectual relief. And as a general rule, an appeal presenting only abstract or academic questions is subject to dismissal as moot. (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]; *Grier* v. *Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330 [127 Cal.Rptr. 525]; *Goldman* v. *City of Santa Barbara* (1962) 203 Cal.App.2d 454, 457 [21 Cal.Rptr. 532].)

Under an established exception, "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213].)

There is nothing in the record to indicate that the City intends to reenact the ordinance or otherwise attempt to establish a business and parking improvement area. But there was adduced testimony by Lee Strong, Mayor of Whittier, California, to the Palo Alto City Council prior to enactment of the ordinance, that "about fifty cities in California" have enacted similar ordinances under authority of the Parking and Business Improvement Act of 1979 (Sts. & Hy. Code, § 36500 et seq.)[2] Hence, the question of whether strict or merely substantial compliance with the directive in section 36522 that "each business" in the proposed improvement area be mailed notice of hearing and the intention to establish an improvement area is required, pre-

---

[2] All further statutory references are to the Streets and Highways Code unless otherwise indicated.

sents an issue of public concern which may recur in Palo Alto, or more likely in a number of other cities. We therefore choose to decide the issue even though it is moot for purposes of the instant appeal.

We need not, however, also review the trial court's finding that the City satisfied the substantial compliance test, as it constitutes a factual determination peculiar to the present appeal and in our opinion is not likely to recur. Even if the City Council reenacts the ordinance, it will very likely pursue a different notice procedure in doing so.

The trial court's conclusion that any party who either actually received notice or attended the hearing cannot object to the notice procedure undertaken pursuant to section 36522 also presents an issue with implications broader than the issues at bench. Whenever a business and parking improvement proposal is challenged for lack of adequate notice, the standing of those who object to the notice procedures and appeared at the hearing will be at issue. Therefore we think it important to resolve the issue of standing as well.

Finally, appellants' vagueness claim is not likely to recur, as it relates only to the specific provision in the ordinance defining the two-tiered assessment classification. Absent any showing that such a provision will be included in a reenacted ordinance or similar legislation enacted by other cities, we see no reason to discuss this issue.

Appellants complain that since the City failed to comply with the notice provisions of section 36522 in enacting the ordinance, it is invalid. The defect in the notice procedure, argue appellants, lies in the failure of the City to mail to "each business" in the proposed improvement area a copy of the resolution of intention as demanded by section 36522.

The City concedes that the requisite notice was not sent to "each business" in the business district affected by the ordinance, but claims that "substantial compliance" with section 36522 is sufficient to proceed with establishment of a parking and business improvement area. And the City submits that it substantially complied with the statutory notice provisions. The trial court agreed, and found the ordinance validly enacted.

Appellants present a dual challenge to the trial court's decision: first, that strict compliance with section 36522 must be established as a condition precedent to a business and parking improvement district; and second, that

the City did not achieve even substantial compliance with the notice requirements of section 36522.

In contending that section 36522 requires strict compliance, appellants focus upon the mandatory language of the statute: it provides that notice of hearing "*shall* be given" in the manner prescribed therein. (Italics added.) Appellants also submit that strict adherence to the provisions of enabling legislation is essential to confer jurisdiction upon a municipality in order to create an improvement district.

■ It has been stated "that where a specific kind of notice is required to be given to the public as a condition precedent to the formation of a district, such legislative direction must be followed." (*Todd* v. *City of Visalia* (1967) 254 Cal.App.2d 679, 683 [62 Cal.Rptr. 485].) Quoting from 52 California Jurisprudence, Second Edition, Waters, section 899, page 559, the court in *Todd* stated the general rule as follows: ". . . [a] statute authorizing the formation of districts must, to satisfy due process requirements, provide for some reasonable notice to persons legally interested in the subject matter. In doing so, the legislature may go beyond constitutional requirements and prescribe in detail, according to its will, the form and manner in which notice shall be given. [¶] The notice provided by statute is a necessary jurisdictional step in the proceeding. And the board is without power to proceed further until notice has been given to all persons pointed out by the statute as being entitled thereto. Actual knowledge on the part of the parties is not a substitute, and does not confer jurisdiction on the board when the statutory procedure has not been followed."

In *O. T. Johnson Corp.* v. *City of Los Angeles* (1926) 198 Cal. 308 [245 P. 164], the municipality acted pursuant to the Street Opening Act of 1903 to open, widen and extend a city street at the expense of property owners within the district to be benefited. The affected property owners sought to enjoin the proceeding, asserting an inaccurate description in the required notice of the streets and area to be improved. The court observed: "'Unquestionably the giving of the notice required by the act is one of the steps necessary to confer upon the council jurisdiction to order the work done. "Proceedings for street assessments, being *in invitum,* must, in order to charge the property of the owner, be based upon a compliance with the provisions of the statute authorizing the work, in so far, at least, as those provisions have to do with the giving of notice or other steps precedent to the jurisdiction of the board to order the work done."'" (*Id.,* at pp. 316-317; quoting from *Ferri* v. *City of Long Beach* (1917) 176 Cal. 645, 646 [169 P. 385].) Finding that the record could not be construed as demonstrating "substantial compliance" with the notice requirements (*id.,* at

p. 319), the court concluded: "As to the improvement attempted to be carried out, the description employed incorrectly designates the streets affected and also fails to describe the opening of the proposed new street. There is, therefore, not only a failure of description, but a misdescription of the proposed improvement, and the ordinance of intention and notice of public work were fatally misleading and defective." (*Id.*, at p. 318, in accord, *Ferri* v. *City of Long Beach, supra,* at pp. 646-647; *Todd* v. *City of Visalia, supra,* 254 Cal.App.2d 679, 685; *City of Petaluma* v. *Hughes* (1918) 37 Cal.App. 473, 475 [174 P. 336].)

■ Strict compliance with statutory directives is not invariably demanded, however, even where the validity of an improvement district is being challenged. In *O. T. Johnson* and *Ferri,* cases relied upon by appellants, the court found lack of *substantial* compliance with statutory notice requirements in enjoining enforcement of street assessment measures. In both cases, defects in the notice procedures were such as to deprive the interested property owners of an accurate statement of the intended assessments.

Thus, while such assessment procedures are *in invitum* and the authority conferred by statute must be strictly followed, our high court has declared that ". . . [i]t is not to be taken that the same rules which apply to inferences, presumptions, rules of evidence and construction of statutes should be differently applied to proceedings which involve a question of taxation. All that the law requires in any matter is a construction agreeable with reason and which gives force and effect to the intentions of the statutes or ordinances as written." (*Roberts* v. *City of Los Angeles* (1936) 7 Cal.2d 477, 489 [61 P.2d 323].)

Unless the intent of the statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test. As noted in *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 931 [120 Cal.Rptr. 707, 534 P.2d 403]: "As a general rule, an ordinance or resolution of an inferior legislative body is invalid if the mandatory prerequisites to its enactment are not *substantially* observed." (Italics in original.)

It is only where statutory requirements are accorded "mandatory" rather than "directory" effect that failure to comply with a particular procedural step will result in invalidating the governmental action to which the procedural requirement relates. (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 409 [158 Cal.Rptr. 662, 599 P.2d 1365]; *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606].) And unless a contrary intent is manifestly expressed, such requirements will be deemed directory

rather than mandatory. (*Edwards, supra,* at p. 410.) ■ There is no simple, mechanical test for determining whether a provision should be given "directory" or "mandatory" effect; as in all cases of statutory interpretation, the court must ascertain the legislative intent. (*Morris, supra,* at p. 910.) "'In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose . . . .'" (*Id.,* at p. 910; quoting from *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].)

■ Turning first to the language of section 36522, we find that its terms are mandatory. The statute provides that each business "shall be given" the specific notice, and does not expressly sanction mere substantial compliance with its provisions. Nevertheless, substantial compliance with statutory directives will suffice if the purpose of the statute is thereby satisfied. (*Hanf* v. *Sunnyview Development, Inc.* (1982) 128 Cal.App.3d 909, 914 [180 Cal.Rptr. 718]; *Cory* v. *Crocker National Bank* (1981) 123 Cal.App.3d 665, 669 [177 Cal.Rptr. 150]; *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620].)

The paramount consideration is the objective of the statute. (*Gary C. Tanko Well Drilling, Inc.* v. *Dodds* (1981) 117 Cal.App.3d 588, 593 [172 Cal.Rptr. 829].) ■ Section 36522 seeks to insure that interested parties receive notice of hearing and are provided with an opportunity to mount an effective protest to the ordinance promotive of the intended improvement. Section 36523 provides that "the city council shall hear all protests and receive evidence for or against the proposed action"; and that the assessment proceedings must be terminated "if a protest is made by businesses in the proposed area which will pay a majority of the assessments or charges proposed to be imposed."[3] Thus, effective notice must be such as to inform a sufficient number of businesses in the proposed improvement area in order that protests may be heard and a majority of businesses can, by expressing opposition, terminate the proceedings.

---

[3]In full, section 36523 reads: "Whenever a hearing is held under this part, the city council shall hear all protests and receive evidence for or against the proposed action. The city council shall also rule upon all protests and its determination shall be final. The city council may continue the hearing from time to time. Proceedings shall terminate if a protest is made by businesses in the proposed area which will pay a majority of the assessments or charges proposed to be imposed."

■ In our view, the objectives of section 36522 can be adequately furthered by a notice procedure even if it fails to strictly comply with the terms of the statute. Effective protest to the proposal does not depend upon notice being sent to every business operating in the affected area. If the number and percentage of businesses actually notified of the impending assessment is sufficient to permit such viable opposition as may exist to assemble, organize and present its position to the Council, the purpose of section 36522 is served.

Literal compliance with the statute would also be unreasonably burdensome to cities seeking to establish improvement areas. Without a readily available list of each business in the proposed area, it would be extremely difficult and perhaps even prohibitively expensive to discover every party entitled to notice under section 36522. And if we were to demand strict compliance with the statute, failure to send the requisite notice to a single business in the proposed improvement area could result in the invalidity of the entire procedure. Nothing in the statutory scheme suggests that the Legislature intended such a harsh result. ■ On the contrary, section 36507 directs us to liberally construe the relevant notice requirements, as well as the remaining provisions of the Parking and Business Improvement Act of 1979.[4] We accordingly conclude that a notice procedure which substantially complies with the provisions of section 36522 is sufficient to satisfy the statutory prerequisites to enactment of a parking and business improvement area. (*Hanf* v. *Sunnyview Development, Inc.*, *supra*, 128 Cal.App.3d 909, 916; *Cory* v. *Crocker National Bank*, *supra*, 123 Cal.App.3d 665, 670; *Fleming* v. *City of Los Angeles* (1932) 127 Cal.App. 699, 702-703 [16 P.2d 355].) The requisite notice must promote and satisfy the objectives of the law; but if it does so, mere technical, insubstantial noncompliance with the provision in section 36522 that notice of hearing must be sent to "each business" in the proposed improvement area will not invalidate the proceedings. (*City and County of San Francisco* v. *Cooper*, *supra*, 13 Cal.3d 898, 931; *Gary C. Tanko Well Drilling, Inc.* v. *Dodds*, *supra*, 117 Cal.App.3d 588, 594.)

As an alternative ground for its judgment, the trial court found that "since [appellants] attended the hearings they are not in a position to complain nor to challenge the notification procedure used by the City." For this position,

---

[4]Section 36507 provides: "This part is intended to be construed liberally and, in the event any provision thereof should be held invalid, the remaining provisions shall remain in full force and effect. However, if the provisions of this part respecting the levying of fees or charges are held invalid in any area within which taxes have been levied pursuant to Part 5 (commencing with Section 36000) of this division, such taxes shall be automatically reimposed in an identical amount and upon the same businesses as a matter of law and no break in the imposition of any such tax shall be deemed to have occurred."

the trial court relied upon the decision in *De Luca* v. *Board of Supervisors* (1955) 134 Cal.App.2d 606 [286 P.2d 395]. Appellants claim that the trial court erred in so ruling.

While this issue, like the others before us, has been rendered moot, we nevertheless find good reason to resolve it. In nearly all cases where the procedure detailed in section 36522 has not been strictly followed due to the failure of the municipality to send notice to "each business" in the proposed improvement area, some affected business owners will receive the requisite notice and appear at the hearing to contest the proceedings. Whether the notified parties are entitled to subsequently assert noncompliance with section 36522 is a question likely to recur, and we think it prudent to attempt a resolution of the issue in this opinion.

Accordingly, we turn to the merits of the standing issue, noting first that in *De Luca, supra,* petitioner challenged administrative approval of an application for zoning variance on the ground that the requisite notice of hearing did not contain "adequate intimation of the true subject matter of the application . . . ." (134 Cal.App.2d 606, 608.) Only petitioner and one other interested property owner were by law entitled to notice. The court noted that "[n]ot only does petitioner fail to disclose whether he was in fact entitled to notice by mail, . . . or whether he was misled thereby into staying away from the hearing, but he does not tell the court whether he did attend and participate in the meeting, with or without protest as to the form of the notice." (*Id.*, at p. 609.)

First citing the "general rule" that "one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice," the court observed further: "This rule applies to one who appears in a lawsuit after defective service of process on him (21 Cal.Jur., § 4, p. 477), to one who responds to a notice of motion without adequate notice (18 Cal.Jur., § 7, p. 652). Also to one who appears in an administrative proceeding without the notice to which he is entitled by law. [Citations.]" (134 Cal.App.2d at p. 609.) Noting the presumption of regularity and legality of official action as well as the petitioner's burden to establish the invalidity of the ordinance, the court also concluded: "If petitioner was misled in any substantial way by the notice in question or if he was not present at the hearing, it was necessary for him to show the fact in his petition: as he has not done this the presumption of lawful action is not overthrown and his petition was properly denied." (*Id.*, at p. 611.)

Appellants argue that *De Luca* is distinguishable for the reason that they have suffered prejudice as a result of the defective notice procedure.

We agree that cognizable prejudice can arise from the failure to substantially comply with the directive to afford notice of hearing to "each business" in the proposed improvement area. The fewer businesses notified of the resolution of intention, the more difficult it is for opponents of the proposal to assemble an effective protest. We therefore conclude that receipt of notice or appearance at the hearing and presentation of a protest cannot of itself preclude a business from subsequently challenging the notice procedure *if sufficient prejudice is demonstrated.* But only a showing that proper notice would probably have permitted a viable protest to be mounted can satisfy this burden of proof. (*De Witt* v. *Board of Supervisors* (1960) 53 Cal.2d 419, 425 [2 Cal.Rptr. 1, 348 P.2d 567].)

In the context of the notice procedure here under scrutiny, prejudice might be demonstrated in two ways. First, proof that but for lack of compliance with the notice requirements a majority protest could have been assembled so as to terminate the proceedings under section 36523 would certainly suffice. In the absence of proof of a majority protest, the party challenging the notice procedure can still gain standing by proof of a reasonable probability that lack of compliance with notice requirements severely compromised efforts to gather and present sufficient opposition to the intended improvement area to convince the city council to defeat the proposal.

Appellants have failed to make such a showing. Only three persons of the many who actually received notice opposed formation of the improvement district at the hearing. Even if every one of the persons not notified of the hearing would have appeared and joined the protest, a majority could not have been assembled. Nor have appellants demonstrated that had the City complied substantially with the section 36522, those persons who were not notified of the hearing would have joined their protest in sufficient numbers to persuade the City Council to vote down the measure. Appellants have accordingly not made a sufficient showing of prejudice to permit their challenge to the notice procedure. (*De Witt* v. *Board of Supervisors, supra,* 53 Cal.2d 419, 425; *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38, 43 [331 P.2d 4]; *Hilton* v. *Board of Supervisors* (1970) 7 Cal.App.3d 708, 715-716 [86 Cal.Rptr. 754]; *Phil Anthony Homes, Inc.* v. *City of Anaheim* (1959) 175 Cal.App.2d 268, 271 [346 P.2d 231].)

Appellants' final contention is that the ordinance is impermissibly vague. Appellants' objection is to section 8(d) of the ordinance, which sets forth

the following standard for the two-tiered assessment classification: "The City Manager or his designee is authorized to classify business as Class A or Class B, taking into account whether a particular business is more or less likely to be benefited by the uses to which revenue raised within the Area are proposed to be put." Appellants' claim that the "more or less likely" standard does not meet "the constitutional test of certainty."

This issue is particular to the ordinance as written. Since the record does not reveal that the ordinance will be reenacted with the same language, or that other similar ordinances will contain an identical standard, there is no reason to believe that appellants' vagueness challenge presents an issue likely to recur. We therefore avoid the issue as moot.

All issues are moot and not worthy of discussion save the substantial compliance and standing questions, which have some public import and are likely to recur. As to these issues: substantial compliance with the notice provisions of section 36522 satisfies the statutory objectives; and those parties who receive notice and appear at a hearing to contest a proposed improvement area have standing to object to the notice procedure, but only if they can show demonstrable prejudice, which appellants have failed to do.

The judgment is affirmed.

Elkington, Acting P. J., and Holmdahl, J., concurred.

On May 28, 1986, the opinion was modified to read as printed above.